IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSE ALFREDO CAVALIERE, JR., }
TDCJ-CID NO.1123139, }
   Petitioner, }
v. }   CIVIL ACTION NO. H-07-4392
 }
NATHANIEL QUARTERMAN, }
   Respondent. }

OPINION ON DISMISSAL

  Petitioner Jose Alfredo Cavaliere, Jr., a state parolee, filed three petitions for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his felony convictions for two counts of criminal nonsupport and one count of delivery of a controlled substance.  (Docket Entry No.1); *Cavaliere v. Quarterman*, Civil Action No.4:08-1007 (S.D. Tex. June 19, 2008) (criminal nonsupport); *Cavaliere v. Quarterman*, Civil Action No.4:08-1008 (S.D. Tex. Apr. 9, 2008) (criminal nonsupport).  The petitions were consolidated into the present case.  (Docket Entry No.10).  Respondent has filed a motion for summary judgment (Docket Entry No.15), to which petitioner has filed a response.  (Docket Entry No.27).  Respondent has also filed a supplemental motion for summary judgment (Docket Entry No.28),  After considering all pleadings and the entire record, the Court will grant respondent's summary judgment motion and deny petitioner federal habeas relief.

I. BACKGROUND AND PROCEDURAL HISTORY

  On September 25, 2001, petitioner entered a plea of *nolo contendere* to two counts of criminal nonsupport in the 179th State District Court of Harris County, Texas in cause numbers 874885 and 874886.  *Cavaliere v. State*, No. 01-02-1000-CR; No.01-02-1001, page 11.

1

Petitioner was sentenced to five years deferred adjudication probation in each cause.  *Cavaliere*, No.01-02-1000, Clerk's Record, page 21; No.01-02-1001, Clerk's Record, page 18.  On June 27, 2002, petitioner entered a guilty plea to the offense of delivery of a controlled substance, namely, methamphetamine in the 179th State District Court of Harris County, Texas, without an agreed recommendation and pled true to the offenses in cause numbers 874885 and 874886.  *Cavaliere v. State*, No.01-02-0999-CR, Clerk's Record, page 17; Reporter's Record, PSI Hearing, pages 3-7.  The state district judge questioned petitioner about his pleas and admonished him accordingly.  *Id.*, Reporter's Record, pages 3-7.  The state district court then accepted his pleas and found evidence in cause number 891143 to substantiate his guilt.  *Id.*, Reporter's Record, PSI Hearing, Volume 4, page 5.  The state district court withheld findings of guilt and reset the three cases for sentencing after the return of a presentence investigation report ("PSI").  *Id.*

At a PSI hearing on September 12-13, 2002, the Court heard argument with respect to petitioner's request for ten years deferred adjudication probation in cause number 891143.  *Cavaliere*, No.01-02-0999-CR, No.01-02-1000-CR, No.01-02-1001-CR, Reporter's Record of Appeal from 179th Judicial District, pages 4-10.  On September 18, 2002, the state district court found him guilty on both counts of criminal non-support in cause numbers 874885 and 874886 and guilty of delivery of controlled substance in 891143.  *Id.*, pages 10-11.  The state district court assessed punishment at two years confinement in a state jail facility on the criminal nonsupport convictions and twenty years confinement and a $100,000.00 fine on the drug conviction.  *Id.*, pages 11-13.

Petitioner's appellate counsel filed a brief on appeal that met the requirements of *Anders v. California*, 386 U.S. 738 (1967) with respect to the criminal nonsupport convictions; petitioner also filed a *pro-se* brief in which he complained that he was denied counsel during his

pleading and sentencing hearings and his plea and confession were involuntary.  *Cavaliere v. State*, No.01-02-01000-CR, No.01-02-01001-CR (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).   On May 27, 2004, the intermediate state appellate court determined that it lacked jurisdiction to consider petitioner's issues and affirmed the judgment of the lower court.  *Id*.  On September 22, 2004, the Texas Court of Criminal Appeals refused his petition for discretionary review in each cause.  *Cavaliere*, Civil Action No. 4:08-1007 (Docket Entry No.1), No.4:08-1008 (Docket Entry No.1).

Petitioner's appellate counsel also filed an *Anders* brief with respect to his drug conviction, to which petitioner filed a *pro-se* brief complaining that his plea was involuntary and that the state district court erred in ordering restitution and in considering his socio-economic status during the sentencing hearing.  *Calvaliere v. State*, No.01-02-00999-CR (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).  On May 27, 2004, the state intermediate appellate court issued a memorandum opinion affirming the judgment of the state district court.  *Id.*  The Texas Court of Criminal Appeals refused petitioner's petition for discretionary review on September 22, 2004.  (Docket Entry No.1).  Petitioner did not seek leave to file a petition for writ of *certiorari.*  (*Id.*).

Petitioner also sought state habeas relief from each conviction.  On April 6, 2005, the Texas Court of Criminal Appeals dismissed his state habeas applications challenging his criminal nonsupport convictions because plaintiff had discharged his sentence from such convictions.  *See Ex parte Cavaliere*, Application No.59,754-02, Application No.59,754-03 at cover.  Subsequent applications challenging the same convictions were also dismissed.  *See Ex parte Cavaliere*, Application No.59,754-05, Application No.59,754-06, Action Taken Supplements).

3

On May 31, 2005, petitioner challenged his drug conviction via a state habeas application on grounds that his plea was involuntary, he was denied the effective assistance of counsel at trial and on appeal, the state district court abused its discretion by going off the record without the explicit agreement of the parties and erred by denying him allocution rights before sentencing. *Ex parte Calvaliere*, Application No.59,754-07, pages 2-19.  The state district court, sitting as a habeas court, entered Findings of Fact and Conclusions of Law and recommended that relief be denied.  *Id.*, page 180.  On October 4, 2006, the Texas Court of Criminal Appeals denied the application without written order on findings of the trial court without a hearing.  *Id.*, Action Taken Supplement.  On October 23, 2006, petitioner filed a Motion for Reconsideration.  *Id.*, Supplement.  On July 28, 2007, the Texas Court of Criminal Appeals indicated that it would not entertain petitioner's Motion for Reconsideration pursuant to Rule 79.2(d) of the Texas Rules of Appellate Procedure.  (Docket Entry No.20, Exhibit C).

In the pending action, petitioner seeks federal habeas relief on the following grounds with respect to all three convictions:

1.   The state district court abused its discretion and denied petitioner due process by failing to record all trial proceedings and by denying his right to allocution;

2.   Petitioner's plea of guilty was involuntary because trial counsel led him to believe that he would receive a suspended sentence;

3.   Petitioner was denied the effective assistance of counsel because counsel did not move to withdraw the plea after the court indicated that it would not abide by an earlier oral agreement; and,

4.   The state district court, sitting as a habeas court, engaged in *ex parte* communications with the State by ruling favorably on the State's motions and by failing to rule on any of petitioner's motions.

(Docket Entry No.1).

4

Respondent moves for summary judgment on grounds that the petition is time-barred and alternatively that petitioner's claims are without merit.  (Docket Entry No.15).

## II. DISCHARGED CONVICTIONS

At the time petitioner filed the pending petition, he had discharged the sentences in each of his criminal nonsupport convictions; therefore, he was no longer in custody for such convictions.  *See Maleng v. Cook*, 490 U.S. 488, 492 (1989) (holding habeas petitioner is not considered to be "in custody" when his sentence has expired for the challenged conviction). Petitioner's current incarceration stems from the drug conviction and not the criminal nonsupport convictions; therefore, this Court is without subject matter jurisdiction to entertain his federal habeas claims under 28 U.S.C. § 2254 with respect to the criminal nonsupport convictions. Accordingly, petitioner's claims with respect these convictions are DISMISSED with prejudice.

## III. ONE-YEAR LIMITATION PERIOD

Petitioner's federal habeas petition is subject to the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *Lindh v. Murphy*, 521 U.S. 320 (1997).  Under the AEDPA, habeas corpus petitions are subject to a one-year limitations period found in 28 U.S.C. § 2244(d), which provides as follows:

> (d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)–(2).  The one-year limitations period became effective on April 24, 1996, and applies to all federal habeas corpus petitions filed on or after that date.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh*, 521 U.S. 320).  Because petitioner's petition was filed well after that date, the one-year limitations period applies to his claims.  *Flanagan*, 154 F.3d at 198.

Under the provisions of the AEDPA, petitioner's one-year limitation period from his drug conviction began on December 21, 2004, the last day petitioner could have filed a petition for writ of *certiorari* in the United States Supreme Court.  *See* 28 U.S.C. § 2244(d)(1)(A); Sᴜᴘ. Cᴛ. R. 13.1.  That date triggered the one-year limitations period which expired on December 21, 2005.  Petitioner's state habeas application from this conviction was pending before the Texas Court of Criminal Appeals from May 31, 2005, to October 4, 2006, at which time the Texas Court of Criminal Appeals denied relief.  Petitioner's state application before the Texas

Court of Criminal Appeals tolled the limitations period for 491 days. *See* 28 U.S.C. § 2244(d)(2); *Villegas v. Johnson*, 184 F.3d 467, 473 (5th Cir. 1999) (concluding petition filed in accordance with state's procedural filing requirements tolls one-year limitations period during pendency of petition). Petitioner's motion for reconsideration, which was pending before the Texas Court of Criminal Appeals until July 28, 2007, tolled the limitations period for 297 days. *See Emerson v. Johnson*, 243 F.3d 931, 935 (5th Cir. 2001) (holding that AEDPA's statute of limitations is tolled during pendency of motion for reconsideration in the Texas Court of Criminal Appeals); *Lookingbill v. Cockrell*, 293 F.3d 256, 261 (5th Cir. 2002) (holding that when motion for rehearing is properly filed within limitations period, that period is tolled from date of habeas denial, as if the motion for rehearing is a further step in the state habeas process). *See also Hooks v. Quarterman*, 224 Fed. Appx. 352, 353 (5th Cir. 2007) (not designated for publication). Together, the pendency of petitioner's state habeas application and his motion for reconsideration before the Texas Court of Criminal Appeals tolled limitations in this case until December 8, 2008. Therefore, the pending petition challenging his drug conviction is timely filed.

Respondent fails to show his entitlement to summary judgment on this ground.

## IV. AEDPA

The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Under the AEDPA, the petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000). In this case, petitioner presented claims in a state habeas corpus application and in a petition for discretionary review with respect to the drug conviction, which the Texas Court of Criminal Appeals denied. As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)). Therefore, only those claims properly raised by petitioner in the petition for discretionary review and the state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing

*Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers"))

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle. . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  To be unreasonable, the state decision must be more than merely incorrect.  *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  *Id.*  Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## A. Involuntary Plea

Petitioner complains that his guilty plea was involuntary because his trial counsel "led him to believe that in exchange for a guilty plea, he would receive a suspended sentence." (Docket Entry No.1).  Respondent maintains that the record shows that petitioner voluntarily entered a guilty plea.  (Docket Entry No.15).

"To be valid, a guilty plea must be voluntary, knowing and intelligent.  *United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007).  The test for determining a guilty plea's

9

validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A court assessing the validity of a plea must look to "all of the relevant circumstances surrounding it and consider such factors as whether there is evidence of factual guilt." *Matthew v. Johnson*, 201 F.3d 353, 364-65 (5th Cir. 2000). The defendant must also have notice of the charges against him, understand the constitutional protections that he has waived, and have advice from competent counsel. *Washington*, 480 F.3d at 315 (citation omitted). Furthermore, the defendant must be competent, and the plea must "not be the product of 'actual or threatened physical harm, or ... mental coercion overbearing the will of the defendant' or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel." *Matthew*, 201 F.3d at 365 (quoting *Brady v. United States*, 397 U.S. 742, 750 (1962)). The trial court must inform the defendant of the consequences of his plea, but "the defendant need only understand the direct consequences of the plea; he need not be made aware of every consequence that, absent a plea of guilty, would not otherwise occur." *United States v. Hernandez*, 234 F.3d 252, 255 (5th Cir. 2000) (per curiam).

Petitioner does not claim that he did not receive real notice of the true nature of the charge against him, that he did not understand the charge against him or constitutional protections that he waived, or that he was induced or coerced by the State in any way to enter a guilty plea. Petitioner contends that he entered a guilty plea on the faulty advice of trial counsel, who led him to believe that he would get a suspended sentence. (Docket Entries No.1, No.27).

A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). "Counsel is needed so that the

accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution." *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972).   A voluntary guilty plea waives all non-jurisdictional defects in the proceedings below except claims of ineffective assistance of counsel relating to the voluntariness of the plea.  *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also U.S. v. Cothran*, 302 F.3d 279, 285-86 (5th Cir. 2002) (holding "[a] plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction").

To establish a claim that trial counsel's defective assistance rendered a plea involuntary, the petitioner must show that counsel's representation fell below an objective standard of reasonableness and a reasonable probability exists that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).

The record belies petitioner's complaint of deficient performance by his trial attorney.  In addition to a judicial confession and statements indicating that he understood the nature of the charges, the punishment range, the written admonishments, and the consequences

of his plea, petitioner also confessed on June 27, 2002, that his plea was freely and voluntarily made and that no agreement had been entered with respect to punishment. *Ex parte Cavaliere*, Application No.59,754-07 pages 186-192.   Petitioner further acknowledged in the written admonishments that trial counsel provided fully effective and competent representation and that he was "totally satisfied" with counsel's representation. *Id.* at 192.   Such attestation carries a strong presumption of verity. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

Moreover, at the plea hearing on June 27, 2002, petitioner entered a guilty plea to the drug charge and confessed to the state district court that he entered such plea because he was guilty, that no one had promised him anything, threatened him or coerced him in any way to enter a guilty plea. *Cavaliere v. State*, No.01-02-0999CR, Reporter's Record, page 3.   Petitioner indicated that he understood the range of punishment and the fine that may be assessed. *Id.* at 3-4.   The state district court explicitly stated that he understood that there was no agreed punishment recommendation and that petitioner requested the court to withhold a finding of guilt and reset the case for sentencing after the return of a PSI report. *Id.*, page 4.   Petitioner replied, "That's fine." *Id.*

The record also reflects that petitioner sought community supervision. *Ex parte Cavaliere*, Application No.59,754-07, page 193.   On September 18, 2002, after the PSI hearing, petitioner's trial counsel asked the Court for ten years deferred adjudication or ten years probation with respect to the drug conviction. *Cavaliere v. State*, No.01-02-0999-CR, Reporter's Record of Appeal from 179th Judicial District, page 4.   After hearing argument in support of such motion, the state district court assessed punishment at twenty years confinement. *Id.*, page 12.

Petitioner's trial counsel attested during state habeas proceedings to the following with respect to petitioner's plea:

> Mr. Cavaliere did not have any agreement with Judge Wilkinson that he would receive deferred adjudication or probation if he plead [sic] guilty in cause number 891143.  Also, I never told Mr. Cavaliere that he would receive deferred adjudication or probation if he pled guilty in cause number 891143.  I told him I thought the judge would send him to prison.  It was Mr. Cavaliere's suggestion that he enter a plea of true to the motions to adjudicate guilty and guilty to the new drug case and request a PSI.  He thought this would give him more time to come up with some money to pay the child-support restitution because the case would be reset for the PSI hearing, and maybe even be able to set up some drug deals before the PSI hearing.  Mr. Cavaliere kept saying that Judge Wilkinson remembers him from before and that the Judge likes him and would not send him to prison.

*Ex parte Cavaliere*, Application No.59,754-07, page 98.   Petitioner's trial counsel further attested that he had fully advised petitioner of the risk of having a PSI hearing.  *Id.*, page 99.  Counsel attested that petitioner wanted the judge to assess his sentence, hoping to get deferred or probation if he could pay off some of his child support restitution and cooperated with police by making drug deals for them.  *Id.*  Petitioner was unable to do either.  *Id.*  Counsel attested that petitioner's plea was "100-percent knowingly and voluntarily given."  *Id.*

The state habeas courts found that trial counsel's affidavit was credible and the facts asserted therein were true.  *Id.*, page 180.  The state habeas courts also found that petitioner was not promised probation in exchange for his guilty plea in the primary case.  *Id.*, page 181.  The state habeas courts further found that there was no plea agreement, that petitioner was properly admonished and that petitioner was afforded the effective assistance of counsel.  *Id.*  The state habeas courts concluded that petitioner failed to overcome the presumption that his plea was knowing and voluntary.  *Id.*

Petitioner attempts to rebut the state habeas courts' findings with the affidavit of his mother Stella Mattos, who attests that she was present when petitioner's trial counsel told him that he would get probation.   (Docket Entry No.27-2, page 1).   Mattos attests that petitioner's trial counsel told petitioner that he would "most likely" serve six months in a state jail facility on the criminal nonsupport convictions and a probated sentence for ten years on the drug charge.  (*Id.*).  Mattos attests that trial counsel reasoned that such sentence would allow the court to punish petitioner and to control his continued child support payments.  (*Id.*).  Mattos further attests that trial counsel said that petitioner would not be viewed as a common criminal because he was well-educated and would be seen as a normal guy who was down on his luck and misguided by a drug dealer who was already in jail.  (*Id.*).  She also attests that trial counsel said that the probation department had indicated that it had no objection to petitioner being placed on probation again, so "she took this to mean that he was already accepted." (*Id.*, page 3).  Mattos stated she felt good after the meeting with trial counsel because "Mr. Graber made it clear that Jose would have a longer period of supervision and would have to pay restitution and fines, but that he wouldn't have to go to prison, only state jail for six months." (*Id.*).  Mattos further attests that trial counsel "made an impressive speech regarding my son" during closing arguments following the PSI hearing on September 18, 2002.  (*Id.*).

Petitioner did not present Mattos's affidavit to the state habeas courts and he proffers no reason for his failure to present such affidavit to the state courts.  Mattos's affidavit, however, does not contravene the habeas record.  Mattos's attestation of her understanding of trial counsel's statements to petitioner closely follows the argument that petitioner's trial counsel made to the state district court at the hearing on September 18, 2002.  *Cavaliere v. State*, No.01-

02-0999-CR, Reporter's Record of Appeal from 179th Judicial District, pages 4-9.  Trial counsel

argued as follows, in pertinent part:

> Judge, the Court has heard all the evidence in this case.  I would like to refresh the Court on some of the issues involved in this case.
>
> Obviously, we're asking this Court for ten years deferred adjudication on [sic] ten years probation in Cause Number 891143.  We're asking the Court to consider amending the conditions of probation and keep him on probation or a light smaller term and shorter term in the state jail on the two criminal non support Motion to Adjudicate Cases.  I think the Court has the ability in this case to solve a couple of issues.  One, the Court can strictly punish Mr. Cavaliere by sending him to the state jail from 180 days to two years on his Motions to Adjudicate and putting him on ten years deferred, which has a ten year to life in prison range over him.  That will solve a couple of problems.  One, it will punish him.  Number two, it will allow for future payments to be made to the children under child support orders.  Some things I'd like to remind the Court is the Court heard from Mr. Cavaliere about how he got involved in this one time drug deal.  This Court knows that he's never been a drug dealer before.  He's not a drug source.  He was not a drug source in this case. . . . We presented testimony from Terril Pickins, the Court pretrial service officer, who said himself under oath that he would have no concerns if the defendant was placed on probation.  He did perfect while he was under pretrial supervision. . . . The defendant doesn't have any history of drug problems or drug dealing. . . . He's an engineer.  He has an MBA.  No criminal history until last year. . . .Once he got arrested he signed a confession, started agreeing and entering into negotiations with the police officers to be of assistance to them. . . He was unsuccessful in completing his end of the bargain to get his case dismissed. . . . The reason he was unsuccessful isn't because he didn't try.  It is because he's not a drug dealer. . . He tried, but he didn't have the ability to go and enter into drugs transactions without her drug dealers or dealers to fulfill his end of the bargain on the cooperation contract with Ira Jones.

*Id.*

In light of this record, the Court finds that Mattos's attestations reflect no more

than her understanding of the strategy employed by petitioner's counsel to obtain the most

favorable outcome for his client and a hopeful guess of the sentence that the state district court

might enter.   Such attestations do not constitute clear and convincing evidence that trial

counsel's performance was deficient or prejudicial performance or that his actions or statements induced petitioner to enter a guilty plea.

Petitioner also argues that his trial counsel was ineffective because he did not move to withdraw petitioner's plea when it was obvious that the Court was not going to abide by an earlier oral agreement.   (Docket Entry No.1).   The record, as previously discussed, affirmatively shows that petitioner did not have an explicit agreement regarding punishment with the State or the trial judge.  Therefore, petitioner's trial counsel's performance was not deficient or prejudicial by his failure to move for a withdrawal of petitioner's plea.

Based on this record, the Court finds that petitioner has failed to show his entitlement to relief under the AEDPA standard with respect to his claim of an involuntary plea and ineffective assistance of counsel.   To the extent that petitioner complains that his trial counsel was constitutionally ineffective aside from petitioner's involuntary plea claims, the Court finds that petitioner has waived such claims by his plea. *See Glinsey*, 209 F.3d at 392.

B. Trial Error

In his second ground, petitioner complains the state district court abused its discretion and denied him due process by failing to fully record the trial proceedings.  (Docket Entry No.1).  Petitioner claims the state district court abused its discretion by going off the record without the express agreement of the parties and denied him due process because the off-the-record comments by the state district judge evince a bias against petitioner.  (Docket Entry No.27).

The record reflects that after petitioner's trial counsel argued for deferred adjudication probation for the drug conviction, the prosecutor argued, as follows:

When asked about his child support and the amount he said ever[y] little aspirin. Over the course of the testimony you heard he's paid a total of $1,000 to raise two children in four years. That's not one little aspirin. He failed to pay. And then when he goes into jail he hooks up with a drug dealer and gets busted on that. He's on deferred out of this court and he commits a drug deal. And, your Honor, that is one drug deal too many. This defendant got on the stand and had a lot of excuses. He had a lot of excuses. And he told you how he has all these judgments and all these bankruptcies and all these problems. But every single problem of his had an excuse. Your Honor, the excuses need to stop. He will not be able to pay back all he's done to that family that you heard from. He needs to – he belongs in prison and deferred is – should not be an option for someone who has already busted it once before.

*Cavaliere v. State*, No.01-02-0999-CR, Reporter's Record of Appeal from 179th Judicial District, pages 9-10. Thereafter, the state district judge assessed petitioner's punishment for the criminal nonsupport convictions. *Id.*, pages 10-11. A discussion was then held off the record in open court with the defendant present. *Id.*, pages 11-12. When the recording resumed, the state district judge assessed petitioner's punishment for the drug conviction. *Id.*, page 12.

Petitioner's mother attests that while off-the-record, the state district judge asked petitioner how much money he had to pay towards child support, to which petitioner replied that he had about $9,000. (Docket Entry No.27-2, page 3). She attests the judge then asked, "Do you think that is enough to keep you out of prison," to which petitioner indicated that was all he had. (*Id.*, page 4). Mattos attests that the state district judge then said, "That's not enough. You are going to prison. Back on the record." (*Id.*).

Petitioner's trial counsel attested in his Second Affidavit during state habeas proceedings that he recalled that the trial judge went off the record during the hearing but he did not recall specifically what the state district judge said, although he recalled some discussion about whether petitioner had made any child-support payments. *Ex parte Cavaliere*, Application No.59,754-07, page 121. The state habeas courts found the affidavit to be credible. *Id.,* page

180.   The state habeas courts further found that "[i]n all things, the applicant has failed to demonstrate that his conviction was improperly obtained or that he is being improperly confined." *Id.*, page 182.

Rule 13.1(a) of the Texas Rules of Appellate Procedure requires the official court report to make a full record of proceedings unless excused by agreement of the parties.  TEX. R. APP. P. 13.1(a); *State v. Herndon*, 215 S.W.3d 901, 905-06 (Tex. Crim. App. 2007).  To preserve error on appeal, a defendant, however, must object to a court reporter's failure to record bench conferences.  *Valle v. State*, 109 S.W.3d 500 (Tex. Crim. App. 2003).  Petitioner did not object to the court reporter's failure to record the conference with the state district judge at trial or on appeal.  Even if petitioner preserved error, he fails to show that he was denied due process by the unrecorded conference.

Habeas relief is not granted to correct every error committed by the trial court; only errors of constitutional magnitude are cognizable by a federal habeas court.  *Mabry v. Johnson*, 467 U.S. 504, 507 (1984).  To be actionable on federal habeas review, trial error must be so grave that it amounts to a denial of the constitutional right to substantive due process, *i.e.*, the error made the trial fundamentally unfair.  *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 24 (1981).  Petitioner contends he was denied due process because the unrecorded conference shows that the state district court was not impartial and biased.  (Docket Entry No.27).

Adjudication before a biased trial judge falls within the 'very limited class of cases' that represents a 'structural error subject to automatic reversal."  *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005) (quoting *Neder v. United States*, 527 U.S. 1, 7-8 (1999)).  To secure relief on such due process claim, petitioner must establish that a genuine question exists

concerning the state district judge's impartiality. *Id.* The Supreme Court has found the following, with respect to judicial remarks during a trial:

> Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. U.S.*, 510 U.S. 540, 555 (1994). However, "bias by an adjudicator is not lightly established." *Richardson v. Quarterman*, 537 F.3d 466, 474-75 (5th Cir. 2008) (citations omitted). Courts ordinarily "presume that public officials have properly discharged their official duties." *Id.* General allegations of bias or prejudice are insufficient to establish a constitutional violation. *Id.* In this case, the record does not show, and petitioner presents no facts that would show, that the state district judge exhibited a bias or a high degree of antagonism toward petitioner that would render the trial unfair. Accordingly, respondent is entitled to summary judgment on this ground.

In his fourth ground, petitioner complains that the state district court violated the Due Process Clause by denying him the right to allocution before sentencing. (Docket Entry No.1, No.27). The state habeas court found that petitioner's was afforded his allocution rights under article 42.07 of the Texas Code of Criminal Procedure. *Ex parte Cavaliere*, Application No.59,754-07, page 181.

The record reflects that before sentencing petitioner on the criminal nonsupport convictions, the state district judge asked if petitioner had anything else to present on

19

punishment, to which petitioner's trial counsel responded negatively.  *Cavaliere v. State*, No.01-02-00999-CR, Reporter's Record of Appeal from 179th Judicial District, page 11.  After the state district judge reviewed his early finding of guilt in the drug case, the judge assessed punishment and then queried, "Do you have anything to say why sentence should not be pronounced against you at this time?  *Id.,* page 12.  Before petitioner answered, the state district judge said, "You having nothing to say," and pronounced the sentence again.  *Id*.  Thereafter, petitioner's trial counsel told the state district court that petitioner "does have something he'd like to tell the Court."  *Id*.  Petitioner complained that the state district judge did not give him the opportunity to speak and the judge asked him if he had anything else to say.  *Id.*, page 13.  Petitioner then apologized for violating the terms of his deferred adjudication probation and indicated that he had made a good faith effort to correct his problems and negotiate with his ex-wife's lawyers during the last six months.  *Id.*

"[T]he right of allocution is deeply rooted in our legal tradition and an important, highly respected right; nonetheless it is neither constitutional nor jurisdiction."  *United States v. Reyna*, 358 F.3d 344, 349 (5th Cir. 2004).  Although petitioner concedes that the denial of such right is not a fundamental defect that would render his trial fundamentally unfair, he contends the state district judge's failure to allow him to speak before sentencing in violation of Article 42.07 of the Texas Code of Criminal Procedure renders his sentence invalid.  (Docket Entry No.27).  Citing *U.S. v. Magwood*, 445 F.3d 826, 830 (5th Cir. 2006), petitioner argues that had he been allowed to speak before sentencing, he would have told the state district judge of his trials with his ex-wife and children and his attempts at cooperating with law enforcement, which would have "moved the trial court to grant a lower sentence."  (Docket Entry No.27).  Petitioner fails to

show that the state district judge was not aware of such trials, especially in light of the PSI Report and two-day PSI hearing.

Moreover, to the extent that petitioner challenges the state court's alleged violation of article 42.07 of the Texas Code of Criminal Procedure, such challenge is not a basis for federal habeas relief.  Even if a cognizable basis for relief, petitioner fails to show, in light of the record before the Court, that the state district judge would have granted him a lower sentence.

Accordingly, petitioner fails to overcome his burden under the AEDPA; therefore, respondent is entitled to summary judgment on this ground.

Finally, petitioner complains that the state district court, sitting as a habeas court, inappropriately engaged in *ex parte* communications with the District Attorney's Office by ruling favorably on the State's motions and declining to rule on his motions or to even consider or review his objections to the State's motions.  (Docket Entry No.1).  Infirmities in state habeas proceedings, however, do not constitute grounds for relief in federal court.  *Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001).  That is because an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself.  *Id.* at 320. Accordingly, respondent is entitled to summary judgment on this ground.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated

differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).   On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).   A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right.   Therefore, a certificate of appealability from this decision will not issue.

VI. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record, the Court ORDERS the following:

1. Respondent's Motion for Summary Judgment (Docket Entry No.15) and Supplemental Motion for Summary Judgment (Docket Entry No.28) are GRANTED.

2. Petitioner's petition for federal habeas relief is DENIED.

3. A certificate of appealability is DENIED.

4. This habeas action is DISMISSED with prejudice.

5. All pending motions are DENIED as moot.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 27th day of March, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE